INDUSTRIAL FASTENERS GROUP, AMERICAN IMPORTERS ASSOCIATION, PLAINTIFF *v.* UNITED STATES ET AL., DEFENDANTS

(Court No. 80–7–01157)

Before BOE, *Judge.*

(Dated January 15, 1982)

*Barnes, Richardson & Colburn; Andrew P. Vance* and *Michael A. Johnson,* for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *David M. Cohen,* Director Commercial Litigation Branch; *Velta A. Melnbrencis,* for the defendants.

BOE, *Judge:* On October 29, 1981, this court issued an Opinion and Order in the above-entitled action, affirming the final determination by the International Trade Administration (ITA) that a subsidy had been paid to the exporters of certain industrial fasteners manufactured in India in the amount of 17.5% of the f.o.b. value of the merchandise, pursuant to the Indian Government's Cash Compensatory Support on Export program. The within action, however, was remanded,

> to enable the ITA to provide a more explanatory basis on which the packing credit loan and the income tax deduction [for export market development] subsidies [in the amounts of 0.4% and 0.1% of the f.o.b. value of the exported merchandise, respectively] have been determined.

Slip Op. 81–99 at 16–17.

The ITA, under date of December 16, 1981, filed with this court a "Statement of International Trade Administration in Compliance With Remand Order" setting forth the reasons for the determinations with respect to the packing credit loans and the special tax deductions for export market development. It is on the basis of this supplemental statement, the administrative record, and all other papers filed herein, that the court reviews the ITA determinations that had been remanded.

The Government of India (GOI), through the Reserve Bank of India, underwrites pre-shipment packing credit loans that are extended to the exporters of certain industrial fasteners at preferential interest rates for the first 90 days of the loan, by paying directly to lending banks an interest subsidy of 1.5% per annum for a period up to 90 days. Moreover, lending banks are prohibited from charging interest on packing credit loans to exporters above the preferential interest rates for the first 90 days. AR. 108. Industrial fastener firms interviewed in India by the ITA "generally reported the use" of packing

credit loans on export sales (Verification Report at AR. 435). The exporters usually extend the loans for more than 90 days. AR. 76–77. See also Verification Report at AR. 435–36. Based upon the information stated above, the ITA calculated the amount of the packing credit loan subsidy to exporters of certain industrial fasteners as 1.5% interest per annum on the f.o.b. value of the exported merchandise paid for a 90-day period, approximating 0.4% of the f.o.b. value. However, the House Ways and Means Committee stated in its Report on the Trade Agreements Act of 1979,

> [T]he Committee intends that the [Administering] Authority will determine the amount of a gross subsidy by determining the value of the subsidy bestowed or otherwise made available,[1] to the extent such a subsidy *is actually used.* For example, if a firm were given a tax deduction for moving to a disadvantaged area, the value of the subsidy is the tax deduction available. However, amounts of the tax deduction not actually used would not be included in the gross subsidy amount. [Emphasis added.]

H.R. Rep. No. 317, 96th Cong., 1st Sess. at 74; *See also* S. Rep. No. 249, 96th Cong., 1st Sess. at 85. There is no substantiation either from the final determination itself or the supplemental statement of reasons presented herein that the ITA determined or attempted to determine the extent to which the packing credit loan is *actually used.*[2] A quantification of the extent to which the packing credit loan is *actually used,* contained in the Verification Report, was limited to the reports of only two exporting firms. One of the firms contacted in India reported that due to credit limitations it had only borrowed 20% of its export value; another firm presented documentation indicating loans of 80% of the value of exports with packing credit interest at preferential rates. AR. 436–37. One of the firms which had been contacted in India by the verification official reported in a document, apparently provided to the verification official, that it utilized 75% of the f.o.b. value against the packing credit. AR. 494.

19 U.S.C.A. § 1677e provides the general rule that:

> [T]he administering authority shall verify all information relied upon in making a final determination in an investigation.

---

[1] The GOI stated in response to an ITA questionnaire that the amount of the packing credit loan that is available to exporters is limited to 85% of the value of the exported merchandise. This same limitation is noted in the Verification Report (AR. 435). In its supplemental statement, the ITA admitted that it had not taken the 85% limitation into account in its final determination, but stated that, if it had considered this fact, the amount of the packing credit loan subsidy would approximate 0.3% of the f.o.b. value of the exported merchandise.

[2] The ITA states in its supplemental statement of reasons that:

> [t]he calculator tapes which reflected the actual quantification of the benefits received by the exporters under the programs for packing credit loans and income tax deductions were misplaced inadvertently. The case handler has searched her office and files for these tapes but has not been able to locate them.

An admission as to the inadvertence on the part of the ITA resulting in the loss of papers utilized in making its determination cannot be considered credible evidence that such quantifications were made by the ITA.

In publishing such a determination, the administering authority shall report the methods and procedures used to verify such information. If the administering authority is unable to verify the accuracy of the information submitted, it shall use the best information available to it as the basis for its determination, which may include the information submitted in support of the petition.

This court is unable to find that the final determination with respect to packing credit loans is supported by substantial evidence or otherwise in accordance with law for the following reasons:

(1) Nothing in the final determination or in the supplemental statement of reasons presented herein provides substantiation that the ITA made a determination as to the extent the packing credit loan is *actually used.*

(2) The calculations of the ITA in its supplemental statement of reasons are at great variance with the quantification of the extent the loans are actually used as reported during the verification process.

In its final determination the ITA describes the special tax deduction in question and states the basis on which it has predicated its determination that the tax deduction amounts to a subsidy:

The Export Markets Development Allowance provides for a tax deduction of 133% of certain specific expenses. . . . The claims made by the manufacturers for this special deduction normally exceed the amount eventually allowed for deduction by the tax authorities. Final settlement of the tax returns normally takes 2 to 3 years.

Since the expenses allowed under the special deduction would normally be deductible in full, the benefit to the manufacturers would be 33 percent of the allowed amount applied to the corporate tax rate. On this basis, we have determined that exporters of fasteners receive a subsidy under this program in the amount of 0.1% of the f.o.b. value of the exported merchandise.

(AR. 732b). The court finds no error in the conclusion of the ITA that the benefit to the exporters would be 33% of the allowed amount applied to the corporate tax rate. However, the calculation of the benefits under this program, reconstructed in the supplemental statement of reasons, does not reflect this formula. The ITA appears to have utilized the figures for the amount of tax benefits *claimed* by five exporters of industrial fasteners, as opposed to the tax benefits *allowed.*[3]

The court cannot sustain the ITA's determination based upon figures representing tax benefits *claimed.* As stated above in reference

---

[3] One notable exception is the tax figures for Auto & General, an exporter, wherein the ITA utilized the figure representing a *1976–77* claim for 133% of the amount of certain expenses incurred, rather than the 33% of the allowed amount applied to the corporate tax rate as formularized in the final determination. The ITA then proceeded to determine the percentage of the f.o.b. value of this "benefit" by using the f.o.b. value of exports for *1979–80.*

to packing credit loans, in order to determine that the amount of the subsidy, the ITA must find a subsidy not only available but *actually used*. As stated by the ITA in its final determination, the finalization of a claim takes 2 to 3 years and normally the claim exceeds the amount eventually allowed. Figures for individual exporters provided in the Verification Report demonstrate that the tax benefit allowance may only be a small percentage of the amount claimed. AR. 438. The court concludes that tax benefit claims not yet finalized are so indefinite as to not constitute a subsidy *available* and *actually used*. The determination, therefore, cannot be sustained on the basis of the applicable standard of review.

Now therefore, it is hereby

ORDERED that the within action, accordingly, is remanded to the administering authority to redetermine, consistent with the foregoing opinion of this court, the amount of subsidies, if any, provided by packing credit loans and the special income tax deductions. Such a redetermination shall be returned to the court within a period of 20 days from the date of entry of this order.